**WO**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ursula Mayes, et al.,<br><br>Plaintiffs,<br>vs.<br><br>Clear Blue Specialty Insurance Company,<br><br>Defendant. | No. CV-24-03674-PHX-SPL<br><br>**ORDER** |

Before the Court are Defendant Clear Blue Specialty Insurance Co.'s Motion for Judgment on the Pleadings (Doc. 19) and Defendant's Motion for Summary Judgment (Doc. 22). Both Motions have been fully briefed. (*See* Docs. 19, 22, 24, 25, 28, 29, 31). For the reasons that follow, Defendant's Motion for Judgment on the Pleadings will be denied, and Defendant's Motion for Summary Judgment will be denied in part and granted in part.[1]

## I. BACKGROUND

Plaintiffs Ursula Mayes, Eva Pepaj, Jessica Hinton, Paola Cañas, Lina Posada, Sandra Valencia, and Alana Marie Souza (collectively, "Plaintiffs") filed this declaratory judgment action against Clear Blue Specialty Insurance Company ("Clear Blue" or "Defendant") on December 20, 2024. (Doc. 1). Plaintiffs asserted claims for breach of contract and sought declaratory relief from this Court that Defendant had an obligation to

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motions are suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

defend and indemnify WG Tucson, LLC ("WG Tucson"). (*Id.*). The parties agree on the majority of facts before this Court. (*See* Docs. 19 at 7; 25 at 2, 30).

Plaintiffs are seven professional models who initiated a lawsuit in the District of Arizona against WG Tucson and WG Mill Ave, LLC ("WG Tempe") in 2023, *Mayes v. WG Mill Ave, LLC*, 23-cv-00118-ROS (the "Underlying Action"). (Doc. 1 at 2; Doc. 30 at 2–3). Plaintiffs alleged in the Underlying Action that their images, likeness, and advertising ideas appeared in advertisements for WG Tucson and WG Tempe's nightclubs, both named "The Funky Monk," without Plaintiffs' consent and without payment to Plaintiffs. (*See* Doc. 30 at 2–3; Doc. 25 at 2). In the Underlying Action, Plaintiffs alleged WG Tucson and WG Tempe misappropriated and used without authorization Plaintiffs' images in violation of § 43 of the Lanham Act, 15 U.S.C. § 1125. Amended Complaint at 2, ¶ 2, *Mayes v. WG Mill Ave, LLC*, No. 23-cv-00118-ROS (D. Ariz. July 21, 2023), Doc. 26. The parties entered into a settlement agreement in the Underlying Action and stipulated to dismissal of the action in March 2024. *See* Notice of Settlement, *Mayes,* No. 23-cv-00118-ROS, Doc. 43; Stipulation of Dismissal, *Mayes*, No. 23-cv-00118-ROS, Doc. 45. In November 2024, Plaintiffs filed a motion to approve consent judgment in the Underlying Action, Consent Motion, *Mayes*, No. 23-cv-00118-ROS, Doc. 47, which was granted by the district court, Order, *Mayes*, No. 23-cv-00118-ROS, Doc. 48. The approved consent judgment (hereinafter, "Consent Judgment") stated that Plaintiffs Mayes, Hinton, Cañas, Posada, Valencia, and Souza[2] settled with WG Tucson in the amount of $150,000. (*See* Doc. 30 at 6–7). As part of the settlement, WG Tucson assigned all rights, claims, and causes of action it allegedly had against Clear Blue arising from their insurance policies to Plaintiffs. (*Id*. at 8).

According to Plaintiffs' Complaint and the Underlying Action, Plaintiffs are "well-known" professional models with varying career backgrounds. (*See* Docs. 1, 19-1). Defendant does not dispute the description of Plaintiffs' careers and refers to the factual

---

[2] The parties agree that Plaintiff Pepaj was not named in the Consent Judgment in the Underlying Action. (*See* Doc. 30 at 7, ¶ 21).

allegations in the Amended Complaint from the Underlying Action in their Motion. (*See* Doc. 19 at 3). Plaintiff Mayes has appeared in various recurring roles in television series such as *Deal or No Deal*, *The Jay Leno Show*, and *The Tonight Show*, held contracts with fashion agencies, appeared in commercial campaigns, and works as a model and actress in California. Amended Complaint at 6–7, Mayes, No. 23-cv-00118-ROS, Doc. 26. Plaintiff Pepaj is a professional model and actress whose work includes "high fashion runway modeling, print features, and film roles." *Id.* at 8. Plaintiff Hinton has held commercial roles, television appearances, modeling contracts, and spokesmodel roles, earning her "elite status as a social media celebrity." *Id.* at 9. Plaintiff Cañas is a professional model who has held roles as a host, runway model, and actor in the United States and internationally, appearing in television programs such as *FOX Sports*. *Id.* at 10. Plaintiff Posada is a fashion model and designer known for her work in lingerie and swimwear modeling. *Id.* at 11. Plaintiff Valencia "is regarded as one of the top models" in Columbia and has modeled internationally. *Id.* at 12. Plaintiff Souza has appeared in commercial campaigns, has been nominated in "numerous beauty pageants," worked as a spokesmodel and cover girl, and was "featured in the movie '*Last Vegas*' with Robert DeNiro, Morgan Freeman, and Michael Douglas." *Id.* at 12–13.

The parties agree that Plaintiffs Mayes, Pepaj, Hinton, and Valencia appeared in photographs posted and utilized by WG Tucson, while Plaintiffs Cañas, Posada, and Souza appeared in advertisements posted by WG Tempe. (*See* Doc. 30 at 3–5).

Defendant is an insurance company who issued insurance policies to WG Tucson for successive annual policy periods from October 21, 2016 to October 21, 2018. (Doc. 30 at 11, ¶ 36). The parties agree that Clear Blue's insurance policies covered Commercial General Liability for WG Tucson under policy numbers AE05-00000037-00 and AE05-00000037-01 (collectively, "the Policy"). (Doc. 30 at 11, ¶ 36–37). The Policy provided up to $1 million in coverage to WG Tucson for "personal and advertising injury" sustained by one person or organization, and $2 million in the aggregate. (*Id.* at ¶ 38). The Policy provided:

> [Clear Blue] will pay those sums that the insured becomes

> legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. [Clear Blue] will have the right and duty to defend the insured against any "suit" seeking those damages. However, [Clear Blue] will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. . . .

(Doc. 30 at 11–12, ¶ 39). The Policy further stipulated that the insurance applied only to "personal and advertising injury" caused by an offense arising out of the business if the offense was committed in the "coverage territory" during the policy period. (*Id.*). The Policy provided the following definitions:

> "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:
>
> a. False arrest, detention or imprisonment;
> b. Malicious prosecution;
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
> f. The use of another's advertising idea in your "advertisement"; or
> g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

(Doc. 30 at 11–12, ¶ 39). Under the Policy, certain exclusions applied to the Personal and Advertising Injury Liability. (Doc. 19-2 at 30). The exclusions ("ERM Exclusion") provided, in relevant part, that:

> [The] insurance does not apply to: Personal and Advertising Injury Parts d, e, f and g Arising Out Of Exhibitions and Related Marketing
>
> The following parts of "personal and advertising injury":
>
> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a

> person's or organization's goods, products or services;
>
> e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
>
> f. The use of another's advertising idea in your "advertisement"; or
>
> g. Infringing upon another's copyright, trade dress or slogan in your "advertisement";
>
> if such activities arise out of or are part of "exhibitions and related marketing".

(Doc. 19-2 at 30). The following definitions applied:

> "Exhibitions and related marketing" means:
> (a) The creation, production, publication, performance, exhibition, distribution or exploitation of motion pictures, television programs, commercials, web or internet productions, theatrical shows, sporting events, music, promotional events, celebrity image or likeness, literary works and similar productions or work, in any medium including videos, phonographic recordings, tapes, compact discs, DVDs, memory cards, electronic software or media, books, magazines, social media, webcasts and web sites.
> (b) The conduct of individuals in shows, theatrical productions, concerts, sporting events, or any other form of exhibition.
> (c) Merchandising, advertising or publicity programs or material for the operations and material described in (a) or (b) above.

(*Id.*).

The parties agree that WG Tucson timely tendered a request for defense and indemnification of the Underlying Action to Clear Blue, and Clear Blue denied that request. (Doc. 30 at 7, ¶ 22). Following the settlement and Consent Judgment of the Underlying Action, Plaintiffs filed the instant action against Clear Blue seeking a declaration of Clear Blue's obligations to pay under the Policy. (*See* Doc. 1).

## II. MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant filed a Motion for Judgment on the Pleadings and Memorandum in Support Thereof on January 14, 2026. (Doc. 19). In their Motion, Defendant argues that Clear Blue had no duty to defend WG Tucson or indemnify Plaintiffs for any amounts

resulting from their settlement and Consent Judgment with WG Tucson. (*Id.* at 1). According to Defendant, the ERM Exclusion exempts coverage of the alleged advertising injuries, because "they arise out of the use of celebrity images in marketing efforts or the advertising of promotional events." (*Id.* at 2). Plaintiffs filed a timely Memorandum of Law in Opposition to Defendant's Judgment on the Pleadings, arguing that the ERM Exclusion does not excuse coverage because the "celebrity" and "promotional events" exclusions are not well defined, ambiguous, and do not apply to Plaintiffs. (Doc. 25). Defendant filed a Reply, disputing Plaintiffs' arguments and asserting Defendant has no duty to defend or indemnify. (Doc. 28).

**1. Legal Standard**

The Court may grant a motion for judgment on the pleadings under Rule 12(c) "when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (footnote omitted). A district court reviews a Rule 12(c) motion under the same legal standard as Rule 12(b)(6). *Dworkin v. Hustler Mag., Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Therefore, all the factual allegations in the complaint are taken as true. *Fleming*, 581 F.3d at 925. However, a court need not accept as true any legal conclusions that are not supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The interpretation of an insurance contract is a question of law" for a court to decide. *Liristis v. Am. Fam. Mut. Ins. Co.*, 61 P.3d 22, 25 (Ariz. Ct. App. 2002), *as amended* (Dec. 26, 2002). An insurance policy is to be read as a whole, "so as to give a reasonable and harmonious effect to all of its provisions." *Nat'l Fire Ins. Co. of Hartford v. James River Ins.*, 162 F. Supp. 3d 898, 903 (D. Ariz. 2016) (citation omitted), *clarified on denial of reconsideration*, No. CV-14-00765-PHX-JAT, 2016 WL 2606984 (D. Ariz. May 6, 2016).

A court will not find an ambiguity in a contract merely because the parties disagree on its meaning. *Shanks v. Davey Tree Surgery Co.*, 845 P.2d 483, 486 (Ariz. Ct. App. 1992); *see also Liristis,* 61 P.3d at 25 ("We construe provisions of an insurance policy according to their plain and ordinary meaning."). However, if a clause is subject to multiple

interpretations, courts construe a clause by "examining the language of the clause, public policy considerations, and the purpose of the transaction as a whole." *Nat'l Fire Ins. Co. of Hartford*, 162 F. Supp. 3d at 904 (citation omitted). If the clause remains ambiguous, the insurance policy is to be construed to provide coverage. *Fall v. First Mercury Ins. Co.*, 225 F. Supp. 3d 842, 846 (D. Ariz. 2016). "Generally, the insured bears the burden to establish coverage under an insuring clause, and the insurer bears the burden to establish the applicability of any exclusion." *Id.* (citation omitted).

**2. Analysis**

Beginning with the text of the Policy, Clear Blue provided "Personal and Advertising Injury Liability" coverage to WG Tucson for "personal and advertising injury" WG Tucson became legally obligated to pay. (Doc. 19-2 at 44). "Personal advertising injury" is defined in the Policy as, *inter alia*, injury arising from the infringement of another's copyright, trade dress, or slogan. (*Id.* at 53). The ERM exclusion exempts coverage of "personal and advertising injury" for infringing another's copyright, trade dress, or slogan if activities arise out of "exhibitions and related marketing[.]" (*Id.* at 30).

Clear Blue concedes that the conduct alleged in the Underlying Action, the publication of Plaintiffs' images on social media in a manner that allegedly violated their right to privacy, triggers coverage under the "Personal and Advertising Injury Liability" section of the Policy. (Doc. 19 at 9). However, Clear Blue maintains that they have no duty to defend because the ERM Exclusion applies. (*Id.*). Clear Blue argues that Plaintiffs' celebrity status triggers the "exhibitions and related marketing" exclusion, which exempts trademark infringement coverage[3] for the "[t]he creation, production, publication, performance, exhibition, distribution or exploitation of . . . celebrity image or likeness[.]" (*Id.* at 6, 10–12; Doc. 19-2 at 159). Defendant further avers that, even if the celebrity image or likeness exception is not triggered, the "advertisements plainly constitute 'advertising' and/or 'publicity programs or material' for 'promotional events.'" (*Id.* at 12). The Court

---

[3] There appears to be no dispute that the Underlying Action resulted in a trademark infringement settlement pursuant to § 43 of the Lanham Act, 15 U.S.C. § 1125. (*See* Docs. 19, 25).

will address each argument in turn.

a. "Celebrity image or likeness" Exclusion

Clear Blue asserts that Plaintiffs' "claims rise and fall on their celebrity status." (Doc. 19 at 10–11). Clear Blue argues that Plaintiffs present themselves as internationally recognized models and entertainers whose likeness value is tied directly to their public status, rather than any private interest. (*Id.* at 11). Defendant argues that Plaintiffs' career details each "leave no doubt" as to their "celebrity image or likeness." (*Id.*).[4] Plaintiffs on the other hand argue that they are well-known models within the modeling industry, but that does not equate to "celebrity" status. (Doc. 25 at 7). Plaintiffs argue that it is Clear Blue's burden "to demonstrate each Plaintiff's claims against WG Tucson related to the publication of 'celebrity image or likeness,'" and that Defendant has failed to make such a demonstration. (*Id.* at 8). Plaintiffs dispute Defendant's assertion that their claims rise and fall on their celebrity status, asserting that their causes of action were based on allegations that their images were misappropriated for use in commercial advertising which made it appear as though they were affiliated with the Funky Monk. (*Id.* at 9). Plaintiffs continue that whether they each individually fit the term "celebrity" is a question of fact inappropriate for the Court to decide on a Rule 12 motion. (*Id.* at 11–14).

The Policy does not define the term celebrity. (*See* Doc. 19-2 at 30). Accordingly, the term must be construed based on its "plain and ordinary meaning." *See Liristis*, 61 P.3d at 25. In an unrelated action in this District against Clear Blue, the court was tasked with interpreting the same provision of a commercial liability policy between Defendant and Precision Housing Distributor, LLC. *See Acosta v. Clear Blue Specialty Ins. Co.*, No. CV-24-03681-PHX-DJH, 2026 WL 2093910, at *1–5 (D. Ariz. July 21, 2026), *reconsideration*

---

[4] For example, Defendant details that Plaintiff Mayes "boasts numerous television appearances" such as *Deal or No Deal* and *The Tonight Show*. (Doc. 19 at 11). Defendant cites to Plaintiff Hinton's appearances on *Baywatch* and *7th Heaven*, as well as her status as a "'social media celebrity' with millions of followers." (*Id.*). Clear Blue identifies that Plaintiff Valencia is "one of the top professional models in her home country of Columbia" and Plaintiff Pepaj has extensive modeling, acting, and commercial experience including being featured in a national Diet Coke advertising campaign. (*Id.*). Defendant's Motion also includes descriptions of Plaintiff Cañas, Posada, and Souza's professional experience and celebrity notoriety. (*Id.*).

*denied* 2026 WL 2204701 (D. Ariz. July 30, 2026). The court in *Acosta* applied the definition of "celebrity" adopted in a recent District of Connecticut matter. *See id.* at 6 (citing *Nobriga v. Clear Blue Specialty Ins. Co.*, No. 3:24-CV-1980 (SVN), 2026 WL 1998727, at *5 (D. Conn. July 10, 2026)). Applying the "common understanding" of "celebrity" as "a famous or celebrated person," the *Acosta* court found that the plaintiffs, as recognizable professional models with large social media followings and television/movie appearances, were not clearly "celebrities." *Acosta,* 2026 WL 2093910, at *6. In so reasoning, the court found that "it is not clear that 'well-known' is functionally equivalent to being a 'celebrity' or 'famous.'" *Id.* (quoting *Nobriga*, 2026 WL 1998727, at *5). The court in *Acosta* further held that the defendant did not clearly define what amount of recognition makes a person a "celebrity" for purposes of the exclusion, the term was ambiguous, and denied the defendant's motion for judgment on the pleadings. *Id*.

The same is true here. While Defendant urges the Court that the ERM Exclusion is straightforward and that the "factual allegations leave no doubt," many courts have found in almost identical insurance policies that "celebrity" is an ambiguous term. *See Acosta,* 2026 WL 2093910, at *6 (denying defendant's motion for judgment on the pleadings holding that the exclusion did not clearly apply as the term "celebrity" is ambiguous); *Nobriga,* 2026 WL 1998727, at *5 (rejecting defendant's motion for judgment on the pleadings and holding that confusion regarding the term celebrity "stems directly from the imprecise language of the [p]olicy."); *Clear Blue Specialty Ins. Co. v. 05 Petete, Inc.*, No. CV 26-1891, 2026 WL 2196263, at *3 (E.D. Pa. July 29, 2026) (finding the plaintiffs who identified themselves as "well-known professional models" did not render them celebrities such that the coverage exclusion should apply at judgment on the pleadings stage). Defendant did not provide a definition of "celebrity image or likeness" in their ERM Exclusion, (*see* Doc. 19-2 at 159), and being a "well-known professional model" does not by definition make each Plaintiff a "celebrity" or "famous." *See Nobriga*, 2026 WL 1998727, at *5 ("[W]hile [plaintiffs] may be well-known models and some have had significant media exposure, that does not necessarily mean they are in turn celebrities or famous generally." (footnote omitted)). Given the ambiguity in the clause "celebrity image

and likeness," Defendant has failed to carry its burden to show the applicability of the ERM Exclusion as the term applies to Plaintiffs. *See Fall*, 225 F. Supp. 3d at 846.

b. "Promotional events" Exclusion

Clear Blue also makes cursory reference to the "promotional events" exclusion in its Motion, arguing that the advertisements "plainly constitute advertising and/or publicity programs or material for promotional events." (Doc. 19 at 12) (internal quotation marks omitted). Defendant argues that the material "advertise[d] themed club events" such as "Solid Gold Saturdays" and "Playboy Halloween Party" and appears to conclude that they fall within the "promotional events" portion of the ERM Exclusion. (*Id.*). Plaintiffs, in response, argue that Defendant is attempting to equate "advertisement" with "publicity program," which, they argue, are separate concepts in the Policy. (Doc. 25 at 16). Plaintiffs further argue that the events WG Tucson advertised were merely parties at the nightclub rather than "promotional events," which would have been thrown in furtherance of promoting something, like a book launch or charity auction. (*Id.* at 16–17).

Again, the Policy fails to define the term "promotional event." (*Id.*; Doc. 19-2 at 30). While this Court cannot create ambiguity in a term where one does not exist, *see Shanks*, 845 P.2d at 486, recent non-binding cases interpreting the same exclusion clause have shown the application of the term "promotional event" is far from clear. *Compare Acosta,* 2026 WL 2093910, at *4–5 (applying the definition of promotional event as "a noteworthy happening or social occasion or activity serving the means of furthering the growth or development of something, particularly the acceptance and sale of merchandise through advertising, publicity, or discounting" but finding the common understanding of promotional event is not broad enough to encompass every promotion in a business), *with Sampedro v. Clear Blue Specialty Ins. Co.*, No. 8:25-CV-00012-JLB-TGW, 2026 WL 1291919, at *3 (M.D. Fla. May 12, 2026) (applying a similar definition but finding the advertisements promoted alcohol sales and DJ appearances, which the court interpreted as "promotional events"), *and Nobriga,* 2026 WL 1998727, at *5, *7 (holding that the advertisements were "used in advertising for noteworthy happenings and social activities that further the growth or development of something" and finding the marketing material,

which was tied to a holiday or recurring weekly promotion, constituted a "promotional event" for purposes of the exclusion).

Applying the *Acosta* and *Nobriga* definitions of the term "promotional event" does not bring further clarity to the application of the advertisements at issue to assess whether the ERM Exclusion applies. For example, it is unclear whether "Solid Gold Saturdays" or "What the Funk? Fridays" should be distinguished from "Playboy Halloween Party" and "Saint Patrick's Pre Party" as "promotional events."[5] (*See* Doc. 19 at 12). Rather, Defendant offers the conclusory statement that the advertisements "plainly" constitute advertising for promotional events. (*Id.*). Because it is Defendant's burden to establish the applicability of the ERM Exclusion to render coverage inapplicable, *see Fall*, 225 F. Supp. 3d at 846, Defendant's threadbare argument that the advertisements were "promotional events" as a matter of law fails.

**3. Conclusion on Motion for Judgment on the Pleadings**

For the foregoing reasons, Defendant has failed to establish that the provided commercial liability should be exempted based on the applicability of the ERM Exclusion. Since Defendant has failed to demonstrate the ERM Exclusion should apply to Plaintiffs, the Court need not reach the issue of whether the ERM Exclusion would render the coverage illusory. The Court will deny Defendant's Motion for Judgment on the Pleadings.

## III. MOTION FOR SUMMARY JUDGMENT

Defendant moves for summary judgment (Doc. 22) and provides a Memorandum of Law in Support of its Motion for Summary Judgment (Doc. 24). Defendant argues that the Court in the Underlying Action lacked jurisdiction to entertain a motion for entry of a Consent Judgment because the parties had already filed a stipulation to dismiss. (Doc. 24

---

[5] The Court notes that *Acosta* made such a distinction, finding that events such as "Champagne Saturdays" and "Latin Ladies Night" were a routine part of the nightclub's business and not a promotional event, whereas events celebrating specific holidays are more akin to a promotional *event*. 2026 WL 2093910, at *4–5. While the advertisements at issue seemingly encompass both "routine" business promotions (e.g., "Solid Gold Saturdays") and "holiday" promotions (e.g., "Playboy Halloween Party"), Defendant here fails to develop such an argument or distinguish between the advertisements Plaintiffs were featured in. (*See* Docs. 19, 28).

at 4-–5). Defendant asserts that because the dismissal was entered in the Underlying Action, it divested the district court of jurisdiction, which meant that the court in the Underlying Action did not have the authority to enter the Consent Judgment. (*Id.*). Defendant concludes that because the Consent Judgment is "invalid," Plaintiffs have no right to pursue a direct action against Clear Blue. (*Id.*). Defendant also argues that Plaintiffs Cañas, Posada, and Souza appeared in advertisements posted by WG Tempe, which was not insured by Clear Blue, and thus have no indemnity claim. (*Id.* at 8). Defendant also contends that Plaintiff Pepaj, who was named in the Underlying Action but was not identified as an assignee in the Settlement Agreement or among the plaintiffs awarded relief in the Consent Judgment, lacks any basis for her claim against Clear Blue. (*Id.* at 10). Finally, Defendant argues that Plaintiffs' derivative breach of contract claims "fails as a matter of law" because Plaintiffs do not identify or quantify any damages sought for breach of contract or identify any witnesses or documents purporting to support the claims. (*Id.* at 11–12).

**1. Legal Standard**

Generally, summary judgment should be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 322–23. The moving party can satisfy its burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id*. When considering a motion for summary judgment, a court must view the factual record and draw all reasonable inferences in a light most favorably to the nonmoving party. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). Material facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party moving for summary judgment bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material. *Anderson*, 477 U.S. at 250. In other words, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and, instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

**2. Analysis**

a. <u>Validity of Consent of Judgment</u>

Defendant argues that the court in the Underlying Lawsuit lacked jurisdiction to entertain a motion for entry of consent of judgment, because it was filed "more than seven months after the case had been dismissed with prejudice and terminated without any retention of jurisdiction." (Doc. 24 at 4). Defendant's argument centers around subject matter jurisdiction — that the stipulation of dismissal divested the court of jurisdiction "rendering any subsequent orders unnecessary and without legal effect." (*Id.* at 6–7). Defendant cites *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375, 381–82 (1994), to support its proposition that in order to retain jurisdiction to enforce the terms of a settlement agreement "including the later entry of a consent judgment, the dismissal order must either incorporate the settlement terms or expressly retain jurisdiction[.]" (*Id.*). Without jurisdiction over the matter, Defendant concludes, the judgment is not only voidable but "void." (*See id.*). Defendant contends that without a valid consent of judgment, Plaintiffs have no right to pursue direct action against Clear Blue. (*Id.* at 5).

Defendant argues that Federal Rule of Civil Procedure 60(b)(4) authorizes this Court to grant relief from a final judgment that is void. (*Id.* at 7).

Plaintiffs in opposition argue that the district court did not lack subject matter jurisdiction when it entered the Consent Judgment. (Doc. 29 at 4–5). Plaintiffs claim that *Kokkonen* allows the district court to retain ancillary jurisdiction to "manage its proceedings, vindicate its authority, and effectuate its decrees." (*Id.* at 5 (quoting *Kokkonen,* 511 U.S. at 380)). Plaintiffs dispute Defendant's claim that the settlement agreement did not retain jurisdiction, arguing instead that "Plaintiffs and WG Tucson did in fact agree the district court would retain jurisdiction post-settlement and the settlement agreement contemplated the district court's consideration, and entry, of the consent judgment post-settlement." (*Id.* at 6 (citing Doc. 29-4 at ¶ 3)). Plaintiffs also argue that this case is distinguishable from *Kokkonen* in that *Kokkonen* dealt with a breach of contract question, while this case concerns the district court's consideration and entry of a Consent Judgment that was "inextricable to the parties' settlement." (*Id.* at 7). Plaintiffs urge this Court to find that the district court in the Underlying Action had the authority to manage its own docket and effectuate its own rulings. (*Id.*). Finally, Plaintiffs argue that even if this Court were to invalidate Judge Silver's entry of the consent of judgment, this would not divest Plaintiffs of the authority to bring suit against Clear Blue, as the settlement agreement assigns WG Tucson's claims to Plaintiffs. (*Id.* at 8).

This Court begins by acknowledging the basic facts of the Underlying Action, which the parties appear to agree upon. The Underlying Action was brought by Plaintiffs against WG Tucson and WG Tempe in 2023 alleging their images, likeness, and advertising ideas appeared in advertisements without their consent and without payment to Plaintiffs. Amended Complaint at 2, 5 ¶¶ 2, 22 *Mayes*, No. 23-cv-00118-ROS, Doc. 26. The district court in the Underlying Action had subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiffs stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) & (B), and under 28 U.S.C. § 1332, as the amount in controversy exceeded $75,000 and there was complete diversity between the parties. *See id.* The parties settled in the Underlying Action and stipulated to dismissal of the action in March 2024. Notice of

Settlement, *Mayes*, No. 23-cv-00118-ROS, Doc. 43; Stipulation of Dismissal, *Mayes*, No. 23-cv-00118-ROS, Doc. 45. The district court dismissed the action with prejudice. Dismissal Order, *Mayes*, No. 23-cv-00118-ROS, Doc. 46. In November 2024, Plaintiffs filed in a motion to approve Consent Judgment in the Underlying Action, attaching the settlement agreement, which was granted by the district court. Motion to Approve Consent Judgment, *Mayes*, No. 23-cv-00118-ROS, Doc. 47; Order, *Mayes*, No. 23-cv-00118-ROS, Doc. 48.

Federal Rule of Civil Procedure 60(b)(4) provides parties relief from final judgment if the judgment is void. "Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010). "Federal courts considering Rule 60(b)(4) motions that assert a judgment is void because of a jurisdictional defect generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction." *Id.* (citation omitted). A judgment is void only where there is a "'total want of jurisdiction' as opposed to an 'error in the exercise of jurisdiction.'" *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 612 (9th Cir. 2016) (quoting *Watts v. Pinckney*, 752 F.2d 406, 409 (9th Cir. 1985)).

A void judgment is narrow list of "fundamental infirmities" as to ensure that "Rule 60(b)(4)'s exception to finality" does not "swallow the rule." *Espinosa*, 559 U.S. at 270. In applying such a rule, the Ninth Circuit has reiterated that "[b]ecause the scope of what constitutes a void judgment is narrowly circumscribed, a judgment is void only where the assertion of jurisdiction is truly unsupported—and a void judgment must lack even a colorable basis." *Fed. Trade Comm'n v. Hewitt*, 68 F.4th 461, 466 (9th Cir. 2023) (citations and internal quotation marks omitted). The Ninth Circuit consistently declines to set aside final judgments for failure to meet such a "high standard." *See Kelly v. Cuomo*, No. 22-16305, 2023 WL 5447373, at *2 (9th Cir. Aug. 24, 2023) (Collins, J., concurring in judgment) (finding the Bankruptcy Court had an arguable basis for jurisdiction despite Nevada law prohibiting the assignment of fraud claims and affirming the district court's

denial of defendant's motion to set aside judgment); *Farmers Direct Prop. & Cas. Ins. Co. v. Perez*, 130 F.4th 748, 753–56 (9th Cir. 2025) (reversing the district court's decision to set aside judgment, finding the judgment was not void as there was at least an arguable basis for subject matter jurisdiction); *Nationstar Mortg., LLC v. Vegas Prop. Servs., Inc.*, No. 22-16681, 2023 WL 8469319, at *1–2 (9th Cir. Dec. 7, 2023) (affirming the district court finding even if prior exclusive jurisdiction applied, the district court had at least an arguable basis for issuing a final judgment); *Hawaiian Kingdom ex rel. Lewis v. United States*, 633 F. App'x 392, 392 (9th Cir. 2016) (affirming the district court's Rule 60(b)(4) denial and reiterating a judgment may be set aside under Rule 60(b)(4) "only for the exceptional case" that a court "lacked even an arguable basis for jurisdiction.") (quoting *Espinosa*, 559 U.S. at 271).

Defendant here does not argue that the court in the Underlying Action had a "total want of jurisdiction" or that there was no arguable basis for jurisdiction. (*See* Docs. 24, 31). Rather, they argue that "the court's later order of dismissal was superfluous, and the consent judgment entered approximately seven months later is void for lack of subject matter jurisdiction." (Doc. 24 at 6). Defendant thus urges this Court to find that the district court's order in the Underlying Action, which granted Plaintiffs' motion for Consent Judgment, is "void" for lack of jurisdiction. (*See id.*). Specifically, Defendant requests that the Court should "conclude that jurisdiction terminated upon the parties' stipulation of dismissal and that the consent judgment . . . was entered without jurisdiction and is therefore void and without legal effect." (*Id.* at 8). Yet Defendant provides no argument as to how the district court did not have *at least* an arguable basis for jurisdiction over the Consent Judgment.

Defendant challenges not the exercise of jurisdiction over the Underlying Action, but whether the district court exceeded its jurisdictional reach by granting Plaintiffs' Consent Judgment. Even assuming, *arguendo*, that the district court went beyond its jurisdictional reach in granting the Consent Judgment, there was an arguable basis of jurisdiction for the court to issue a consent judgment over its own case. *See Kokkonen*, 511 U.S. at 380 (recognizing a district court's jurisdiction to "manage its proceedings, vindicate

its authority, and effectuate its decrees."); *see also Hook v. State of Ariz., Dep't of Corr.*, 972 F.2d 1012, 1014 (9th Cir. 1992) ("A district court retains jurisdiction to enforce its judgment[.]"). This Court, making no finding about the district court's subject matter jurisdiction over the Consent Judgment, finds that the district court in the Underlying Action certainly had at least an arguable basis for issuing a Consent Judgment on a settled case exercising both federal question and diversity jurisdiction before it. *See Fed. Trade Comm'n*, 68 F.4th at 466. In other words, there was not a "total want of jurisdiction" over the Underlying Action. *See NewGen, LLC*, 840 F.3d at 612. Thus, the Court declines Defendant's invitation to invalidate the final judgment in the Underlying Action, as the district judge in that action had *at least* an arguable basis for exercising jurisdiction. Accordingly, Defendant's request for summary judgment on the grounds that the final judgment in Underlying Action is void fails.

b. Indemnity Claim as to Plaintiffs Cañas, Posada, and Souza

Defendant argues that even assuming Plaintiffs had a valid basis to recover the settlement amount from Clear Blue, Plaintiffs Cañas, Posada, and Souza have no right to indemnity because their alleged injuries were committed by WG Tempe. (Doc. 24 at 8). Defendant argues that, pursuant to the Policy, Defendant was the insurer of WG Tucson and its business "The Funky Monk" in Tucson, operating out of the address 350 E. Congress Street in Tucson, Arizona. (*Id.* at 9). Defendant argues that the images containing Plaintiffs Cañas, Posada, and Souza were published on the Tempe Funky Monk's Instagram accounts, owned and operated by WG Tempe. (*Id.*). "There were no allegations, and no evidence, that WG Tucson or the Tucson Funky Monk misappropriated or used the images of Cañas, Posada, or Souza." (*Id.*). Defendant asserts that Plaintiffs Cañas, Posada, and Souza have no legal right to enforce the Consent Judgment[6] because their claims fall outside the coverage afforded by the Clear Blue Policies. (*Id.* at 10).

Plaintiffs argue in response that their asserted claims against WG Tucson triggered

---

[6] Defendant maintains that the Consent Judgment was not valid and enforceable. (Doc. 24 at 10). Because the Court already found otherwise, the Court will move on to Defendant's next substantive argument regarding Plaintiffs Cañas, Posada, and Souza.

Clear Blue's duty to defend in the Underlying Action. (Doc. 29 at 9). Plaintiffs allege "[t]hat all claims may not have fallen within the Clear Blue policy is immaterial to the Court's duty to defend analysis[.]" (*Id.*). Plaintiffs continue "[t]hat Clear Blue may ultimately have no indemnification obligations as to Canas (*sic*), Posada, Souza, and Pepaj, and may not be obligated to satisfy any judgment in their favor, does not excuse its defense obligations[.]" (*Id.*).

This Court, sitting in diversity jurisdiction over the instant matter, must apply Arizona contract law. *See Ins. Co. of N. Am. v. Fed. Exp. Corp.*, 189 F.3d 914, 919 (9th Cir. 1999). It is undisputed here that Plaintiffs and Defendant did not form a contract with one another, but rather Plaintiffs entered into a *Damron*[7] agreement with WG Tucson. (*See* Doc. 30).

> A *Damron* agreement refers to a settlement agreement between an insured and an injured party in circumstances where the insurer has declined to defend a suit against the insured. In such an agreement, the insured agrees to liability for the underlying incident and assigns all rights against the insurance company to the injured party. The injured party, in turn, agrees to relieve the insured of all liability and recover only against the insurance company.

*Quihuis v. State Farm Mut. Auto. Ins. Co.*, 748 F.3d 911, 912 n.1 (9th Cir. 2014).

After obtaining a judgment pursuant to a *Damron* agreement, "the claimant then seeks payment of the judgment by the insurer based on the latter's indemnity obligation under the policy." *Quihuis v. State Farm Mut. Auto. Ins. Co.*, 334 P.3d 719, 722 (Ariz. 2014). "Standing in the insured's shoes as assignee, the claimant may also sue the insurer on various claims, including breach of the insurance contract and bad faith." *Id.* at 723.

As the Court previously identified, generally it is the insured's burden to establish coverage under an insuring clause. *See Fall*, 225 F. Supp. 3d at 846. Plaintiffs, as assignees of WG Tucson, take the place of the insured. *See Quihuis*, 334 P.3d at 723.

Plaintiffs allege in their Complaint that Defendant had a duty to defend and a duty

---

[7] *Damron v. Sledge*, 460 P.2d 997 (Ariz. 1969).

to indemnify. (Doc. 1). An insurers duty to defend in an insurance policy is broader than a duty to indemnify. *See Lennar Corp. v. Auto-Owners Ins. Co.*, 151 P.3d 538, 543 (Ariz. Ct. App. 2007); *Cal. Cas. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 913 P.2d 505, 508 (Ariz. Ct. App. 1996). In Arizona, whether an insurer has a duty to defend is determined by the allegations made against the insured. *Lennar Corp.*, 151 P.3d at 544. In contrast, "[a]n insurer's duty to indemnify hinges not on the facts the claimant alleges and hopes to prove but instead on the facts (proven, stipulated or otherwise established) that actually create the insured's liability." *Colo. Cas. Ins. Co. v. Safety Control Co.*, 288 P.3d 764, 772 (Ariz. Ct. App. 2012). The "insurance policy language controls the scope and extent of an insurer's duty to defend[.]" *Cal. Cas. Ins. Co.*, 913 P.2d at 508.

Whether the insurers had a duty to defend in the Underlying Action "is determined by the allegations made against" Defendant. *See Lennar Corp.*, 151 P.3d at 544. "If the plaintiffs' allegations implicate any insurance coverage on which [WG Tucson] is a named insured, then the insurers owe a duty to defend [WG Tucson]." *Id.* Courts look at the plaintiff's underlying complaint to assess if the insurer had a duty to defend. *See Tri Star Theme Builders, Inc./PCL Constr. Servs., Inc. v. Hawkeye-Sec. Ins. Co.*, 653 F. Supp. 2d 973, 977 (D. Ariz. 2009), *reversed on other grounds* 426 Fed. App'x. 506 (9th Cir. 2011). "If the complaint in the action brought against the insured upon its face alleges facts which come within the coverage of the liability policy, the insurer is obligated to assume the defense of the action, but if the alleged facts fail to bring the case within the policy coverage, the insurer is free of such obligation." *Kepner v. W. Fire Ins. Co.*, 509 P.2d 222, 224 (Ariz. 1973) (citation omitted).

Here, Plaintiffs alleged in their Underlying Action that WG Tucson and WG Tempe, through their respective nightclubs "The Funky Monk," misappropriated Plaintiffs' images, photos, and likeness. Amended Complaint, *Mayes*, No. 23-cv-00118-ROS, Doc. 26. Specifically, Plaintiff Cañas alleged that she was depicted in an image advertising "Back to School Thursdays" posted by The Funky Monk Tempe Instagram account. *See id.* at 10–11. Plaintiff Posada alleged that she was featured in an image promoting "Skyys the Limit Saturdays" posted by The Funky Monk Tempe Instagram account. *Id.* at 11.

Plaintiff Souza alleged that her image and likeness was misappropriated in an advertisement for "Back 2 School Soiree" posted by The Funky Monk Tempe Instagram account. *Id.* at 12–13. The Amended Complaint in the Underlying Action further alleged that WG Mill Ave, LLC operated The Funky Monk located in Tempe, Arizona, and that WG Tucson, LLC operated The Funky Monk in Tucson, Arizona. *Id.* at 3. There is no dispute that Defendant's Policy only applied to WG Tucson. (*See* Doc. 30 at 12–13). Accordingly, Clear Blue had no duty to defend WG Tucson in the Underlying Action with respect to Plaintiffs Cañas, Posada, and Souza, as the Amended Complaint in the Underlying Action only alleged image misappropriation for these Plaintiffs by The Funky Monk in Tempe. *See* Amended Complaint at 10–13, *Mayes*, No. 23-cv-00118-ROS, Doc. 26; *see Lennar Corp.*, 151 P.3d at 543–544. Defendant had no duty to defend, and thereby no duty to indemnify, WG Tucson based on the conduct alleged by Plaintiffs Cañas, Posada, and Souza in the Underlying Action. *See Kepner,* 509 P.2d at 224. Thus, summary judgment will be entered in Defendant's favor as to Plaintiffs Cañas, Posada, and Souza.

c. Validity of Plaintiff Pepaj's Claim

Defendant argues that Plaintiff Pepaj lacks any legally cognizable basis to assert a claim against Clear Blue, because she was neither an assignee of WG Tucson nor a party to the Consent Judgment. (Doc. 24 at 10). Plaintiffs do not directly address this argument, instead plainly asserting that "WG Tucson assigned its breach of the duty to defend claim against Clear Blue to Canas (*sic*), Posada, Souza, and Pepaj." (Doc. 29 at 8–9).

The record before this Court, which neither party disputes, shows that Plaintiff Pepaj was not included in the Consent Judgment and was not assigned WG Tucson's rights under the Policy. (*See* Doc. 29-4 at 3, 15). While Plaintiff Pepaj was included in the settlement agreement (*see* Doc. 29-4 at 8), her name was omitted from the "Entry of Stipulated Judgment Against WG Tucson, LLC" clause. (*Id.* at 3, 15). Plaintiff Pepaj was also omitted from the district court's granted Consent Judgment. (*See* Doc. 29-6 at 1–7). Plaintiff Pepaj has asserted no authority by which to bring declaratory relief or breach of contract relief against Defendant Clear Blue, as she neither has a valid consent of judgment or assignment

of rights.[8] (*See id.*). Accordingly, summary judgment will enter in Defendant's favor regarding Plaintiff Pepaj's claims.

d. Breach of Contract Claim and Damages

Defendant finally asks the Court to grant summary judgment in their favor on Count One of Plaintiffs' Complaint. (*See* Doc. 24 at 11–12). Defendant argues that Plaintiffs' breach of contract claim is legally deficient because they have not established or quantified any damages for breach of contract. (*See id.*). Defendant claims that "having failed to disclose or substantiate their claimed damages, Plaintiffs should be precluded from recovering them." (*Id.* at 12). Plaintiffs do not specifically respond to Defendant's arguments regarding their lack of damages particularly attributed to their breach of contract claim. (*See* Doc. 29). Rather, Plaintiffs argue that Defendant had the duty to defend WG Tucson, and WG Tucson assigned its breach of the duty to defend claim to Plaintiffs. (*See id.* at 8–9).

"To bring an action for the breach of the contract, the plaintiff has the burden of proving the existence of the contract, its breach and the resulting damages." *Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975). Arizona courts require a plaintiff to show damages for breach of contract "with reasonable certainty." *Gilmore v. Cohen*, 386 P.2d 81, 82 (Ariz. 1963). However, "well established is the right to a jury trial in a breach-of-contract case." *Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004). In other words, "doubts as to the extent of the injury should be resolved in favor of the innocent plaintiff and against the wrongdoer. But it cannot dispel and requirement that the plaintiff's evidence provide some basis for estimating his loss." *Gilmore*, 386 P.2d at 82; *see also Great W. Bank v. LJC Dev., LLC*, 362 P.3d 1037, 1049 (Ariz. Ct. App. 2015) ("[W]e have long-recognized that absolute certainty in the amount of damages is not necessary where the fact of damage is proven, with doubts to be resolved in favor of the non-breaching party.").

---

[8] Plaintiff Pepaj also does not assert the existence of any independent contract with Defendant. (*See* Doc. 29).

Here, Defendant does not dispute the existence of a contract with WG Tucson or Plaintiffs' rights to enforce such a contract. (*See* Doc. 24). Defendant's challenge appears limited to the specificity of Plaintiffs' alleged damages as the result of a breach of contract. (*See id.* at 11–12).

Plaintiffs pled in their Complaint resulting damages based on Defendant's breach of contract with WG Tucson. (*See* Doc. 1). Specifically, Plaintiffs requested "damages in an amount to be proven at trial" with regard to their breach of contract claim (Count One) and "a judicial declaration that Clear Blue has an obligation to defend and indemnify WG Tucson in the Underlying Action" with regard to their declaratory judgment claim (Count Two). (*Id.* at 7–8). Plaintiffs also alleged that they entered into a Consent Judgment with WG Tucson in the Underlying Action in the amount of $150,000 "based on what a jury might reasonably award Plaintiffs, including the amount of attorneys' fees and costs a Court may reasonably award Plaintiffs." (*Id.* at 6–7). In their initial disclosures, Plaintiffs alleged that their damage computation includes "judgment in the underlying action against WG Tucson" which they are seeking to collect on. (Doc. 23-12 at 4). "Plaintiffs will also seek all costs and fees incurred by WG Tucson and incurred by Plaintiffs in this action." (*Id.*). Plaintiffs also reserve damages "under various Arizona statutes, including, where applicable, punitive damages." (*Id.*).

Defendant challenges the fact that Plaintiffs have failed to specifically substantiate their breach of contract claim. (*See* Doc. 24). However, Arizona courts do not require plaintiffs to provide evidence of their damages with "absolute certainty" so long as the fact of damage is proven. *See Great W. Bank,* 362 P.3d at 1049. Furthermore, Plaintiffs' requests for damages involves both the breach of contract claim (Count One) and the declaratory judgment (Count Two). In other words, Plaintiffs claims appear interwoven in that they seek for this Court to declare that Defendant had a duty to defend WG Tucson, and that by failing to do so Defendant breached its contract and damages resulted. (*See* Doc. 1). Defendant has not shown that they are entitled to judgment as a matter of law on Plaintiffs breach of contract claim.

While Defendant argues that Plaintiffs failed to specifically identify a quantity of

damages, Plaintiffs need only provide a general basis for determining damages regarding their breach of contract claim. *See Gilmore*, 386 P.2d at 82. It is not Plaintiffs that move for summary judgment on their claim of damages, but Defendant that moves for summary adjudication for failure to "identify any witnesses or documents supporting a damages claim" as required by Rule 26. (*See* Doc. 24 at 12). But as Defendant identifies, the remedy for any "failure to disclose" pursuant to Rule 26 is that Plaintiffs may be precluded from using such evidence, witnesses, or documentation on a motion, at a hearing, or at trial. (*See id.*); *see* Fed. R. Civ. P. 37(c)(1). Defendant has provided no authority to suggest that Plaintiffs' alleged "failure to disclose" allows Defendant judgment as a matter of law. (*See* Doc. 24). Construing the factual record and drawing reasonable inferences most favorably to Plaintiffs, Defendant has failed to show that Count One is subject to summary adjudication. *See Leisek*, 278 F.3d at 898. Accordingly, Defendant's motion for summary judgment on Count One will be denied.

## IV. CONCLUSION

The Court has determined that Defendant is entitled to summary judgment regarding Plaintiffs Cañas, Posada, Souza, and Pepaj. Defendant has otherwise failed to show it is entitled to summary judgment. Therefore, Defendant's Motion for Summary Judgment (Doc. 22) will be granted in part and denied in part. Defendant's Motion for Judgment on the Pleadings (Doc. 19) will be denied.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Judgment on the Pleadings and Memorandum in Support Thereof (Doc. 19) is **denied**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 22) is **denied in part and granted in part, as follows:**

(1) Summary judgment is entered in Defendant's favor regarding Plaintiffs Cañas, Posada, Souza, and Pepaj. Plaintiffs Cañas, Posada, Souza, and Pepaj are **dismissed**.

(2) Defendant's request for summary judgment on the grounds that the underlying consent judgment was void is **denied**.

(3) Defendant's request for summary judgment on Count One (breach of contract) is **denied**.

(4) Plaintiffs Mayes, Hinton, and Valencia may proceed on the Complaint (Counts One and Two).

Dated this 28th day of September, 2026.

Honorable Steven P. Logan
United States District Judge